IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JEFFERY B. HARSHBARGER,

           Plaintiff,

v.                                            CIVIL ACTION NO. 3:05-0588

CSX TRANSPORTATION, INC.,
a Virginia Corporation,

           Defendant.

**ORDER**

Pending before the Court is Defendant CSX Transportation, Inc.'s Motion to Dismiss all four counts in Plaintiff's Complaint. For the following reasons, the Court **GRANTS** Defendant's motion with respect to Plaintiff's claim for outrage, violation of public policy, and breach of oral contract, and **DENIES** Defendant's motion with respect to Plaintiff's claim for equitable estoppel and detrimental reliance.

**I.**
**FACTS**

Plaintiff began working for Defendant in its Risk Management Department in approximately 1990. Plaintiff alleges in his Complaint that, during the course of his employment, he was harassed and intimidated by his supervisor, A.F. Bobersky. Plaintiff states he complained of Mr. Bobersky's actions on August 7, 2001, after being assured that he would not be fired or retaliated against for documenting his complaints. Despite his complaints, Plaintiff states that Mr. Bobersky continued to harass him on more than one occasion. Therefore, Plaintiff continued to complain about Mr. Bobersky's actions. In April of 2003, Plaintiff's complaints were ultimately

reassigned to Matt Charron, a Human Resource employee, and Plaintiff spoke to Mr. Charron about the situation.  A short time later, Mr. Charron contacted Plaintiff to discuss allegations that Plaintiff was involved in misconduct.  Plaintiff denied the allegations and suggested to Mr. Charron that Mr. Bobersky was behind the allegations.  Plaintiff did not speak with Mr. Charron again.  However, on July 24, 2003, Plaintiff was fired.  Plaintiff believes that Mr. Bobersky fabricated the allegations against him in retaliation for Plaintiff's complaints against him.  Plaintiff asserts that such action violated Defendant's Code of Ethics and the verbal assurances he received that he would not be terminated.  Therefore, Plaintiff filed his Complaint in this Court on July 22, 2005.

## II.
## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defending party may move to dismiss if the pleading party has failed to state a claim for which relief may be granted.  A Rule 12(b)(6) motion tests the sufficiency of the pleading.  It does not resolve factual disputes, "the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citations omitted).  In considering the motion, the claims must be viewed in the light most favorable to the non-moving party and all allegations accepted as true. *Id*.  Dismissal is appropriate only when it appears beyond a doubt that no set of facts would entitle the pleader to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## III.
## DISCUSSION
### A.
### Tort of Outrage

In its Motion to Dismiss, Defendant first argues that Plaintiff's claim for outrage must be dismissed because it was not filed within the statute of limitations and, even if it was, it is not

supported by the facts alleged. The parties agree that these issues are controlled by the West Virginia Supreme Court's decision in *Travis v. Alcon Laboratories, Inc.*, 504 S.E.2d 419 (W. Va. 1998). In Syllabus Point 8 of *Travis*, the court held:

> In claims for intentionally or recklessly inflicted emotional distress that arise from the termination of employment, the two-year statute of limitation for personal injuries begins to run on the date of the last extreme and outrageous conduct, or date of the last extreme or outrageous conduct, or threat of extreme and outrageous conduct, which precipitated the termination of employment.

Syl. Pt. 8, *Travis*. Defendant asserts that the purported outrageous conduct as alleged in Plaintiff's Complaint occurred from early 2001 to early 2003, with the last alleged conduct occurring in April of 2003. However, Plaintiff did not file his Complaint until July 22, 2005, more than two years after the precipitating conduct. Therefore, Defendant argues Plaintiff's cause of action for outrage is untimely.

In order for Plaintiff's claim of outrage to be timely under these facts, the last outrageous conduct would have had to occurred within the period between July 22, 2003, and July 24, 2003, the date Plaintiff was terminated. If the last alleged outrageous conduct occurred before July 22, 2003, Plaintiff's claim would be barred by the two-year statute of limitations because his Complaint was not filed until July 22, 2005. In order to prove the tort of outrageous, the West Virginia Supreme Court held in Syllabus Point 3 of *Travis*:

> In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional

> distress,[1] four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis* (footnote added). Plaintiff states in his Response to Defendant's motion that he does not know when the last act of outrageous conduct occurred and, thus, discovery is necessary and Defendant's motion is premature. However, in examining the elements of the claim, the Court finds it would be impossible for Plaintiff to prove his claim if he is unaware of any outrageous conduct that occurred between July 22, 2003, and July 24, 2003. Under *Travis*, Plaintiff must have been aware of the conduct in order for it to have caused him such severe emotional distress that a reasonable person could not have endured it. Otherwise, Plaintiff has not stated a claim. Clearly, if this conduct occurred, Plaintiff necessarily would be aware of it without the need for further discovery. However, Plaintiff has not alleged such conduct in his Complaint during the time frame at issue. In fact, the last conduct Plaintiff discusses in his Complaint occurred "a short time after" April of 2003 when Mr. Charron spoke to him about allegations that he had committed some wrongdoing. *Complaint*, ¶ 20. According to Plaintiff, this discussion was the last time he spoke with Mr. Charon. *Id.* The next paragraph in the Complaint provides that Plaintiff was terminated on July 24, 2003. *Id.* There are no allegations in the Complaint that Defendant committed an outrageous act

---

[1]In *Travis*, the court recognized that intentional or reckless infliction of emotional distress is synonymous with the tort of outrage. 504 S.E.2d 419.

during the interim period. If Plaintiff could identify an outrageous act, but simply was unsure of precisely when the act occurred, then, perhaps, Plaintiff could conduct discovery to determine whether it fell within the statute of limitations. Here, however, there is no such allegation in the Complaint, nor has Plaintiff identified any such act in his Response to Defendant's motion. Thus, even considering the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff's claim for outrage must be dismissed and **GRANTS** Defendant's motion to dismiss this count.

## B.
## Violation of Public Policy

Defendant next argues for dismissal of Plaintiff's claim that Defendant violated public policy by terminating him. In his Complaint, Plaintiff alleges:

> that it is a violation of West Virginia Public Policy for CSX to terminate his employment based upon his reasonable reliance of a business policy which prohibits retaliation against employees who report harassment against a management employee. As a direct and proximate consequence thereof, plaintiff asserts that he suffered damages for loss of past, present and future wages.

*Id*. at ¶ 33. In his Response to Defendant's motion, Plaintiff recognizes that employers have an absolute right to terminate at-will employees, such as himself, except that they may be liable if the termination violates a substantial public policy. *See* Syl., *Harless v. First National Bank*, 246 S.E.2d 270 (W. Va. 1978) (stating "[t]he rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge"). Defendant maintains, however, Plaintiff has

failed to identify any clear mandate of public policy that was violated and its alleged failure to follow an internal business policy is not the equivalent of violating a public policy. For the following reasons, the Court agrees with Defendant.

In Syllabus Point 2 of *Birthisel v. Tri-Cities Health Services Corp.*, 424 S.E.2d 606 (W. Va. 1992), the West Virginia Supreme Court held that "[t]o identify the sources of public policy for purposes of determining whether a retaliatory discharge has occurred, . . . [courts] look to established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." Syl. Pt. 2, *Birthisel*. In *Tiernan v. Charleston Area Medical Center, Inc.*, 506 S.E.2d 578 (W. Va. 1998), the court further explained that numerous other courts "unanimously take the position that public policy has to be preexisting and germinate from constitutional, statutory, or regulatory provisions or prior judicial decisions." 506 S.E.2d at 583 (footnote with citations omitted). In addition, the *Tiernan* court stated that "'courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject.'" *Id*. at 584 (quoting *Parnar v. Americana Hotels, Inc*., 652 P.2d 625, 631 (Haw. 1982).

In this case, Plaintiff concedes in his Response that his "public policy claim is not clearly enumerated in the state or federal constitution, nor is it prescribed in a regulatory framework, and it is not a precedent imbued in a prior judicial decision." *Plaintiff's Response in Opposition to Defendant's Motion to Dismiss*, at 5. Nevertheless, Plaintiff states that his claim of retaliation for reporting the hostile, abusive, and harassing behavior of his supervisor should be considered a violation of public policy, particularly if it rises to the level of outrage. In *Travis*, however, the West

Virginia Supreme Court rejected an argument that all forms of harassment by an employer violate human and civil rights under the West Virginia Human Rights Act. In so doing, the court held "that no general public policy against harassment in the workplace is created by the West Virginia Human Rights Act for purposes of West Virginia wrongful discharge law." 504 S.E.2d at 433. Instead, the court stated that in employment cases arising under the West Virginia Human Rights Act, the question that must be resolved "is whether the individual was discriminated against because of race, religion, color, national origin, ancestry, sex, age, blindness, or handicap." *Id*. Given this holding in an analogous situation, Plaintiff's inability to identify any preexisting public policy supporting his claim, and the West Virginia Supreme Court's caution about declaring new public policy in the absence of a prior expression on the subject, this Court agrees with Defendant and finds that Plaintiff has failed to allege a viable claim that Defendant has violated public policy by allegedly failing to comply with its own internal policies.[2] Therefore, the Court **GRANTS** Defendant's motion to dismiss public policy claim.

## C.
### Equitable Estoppel/Detrimental Reliance

Defendant next asserts that Plaintiff's claim for "Collateral Estoppel/Detrimental Reliance" must be dismissed because no such cause of action exists. In his Response, Plaintiff states

---

[2]In support of his argument, Plaintiff cites the concurring opinion in *Younker v. Eastern Associated Coal Corp*., 591 S.E.2d 254 (W. Va. 2003) (per curiam), in which Justice Davis recognized the desirability of codes of business conduct (CBCs) as a means to advance social policy. 591 S.E.2d at 260. However, the court in *Younker* determined that the CBC at issue did not create a contract between the company and the employee and neither the majority opinion nor the concurring opinion said anything about a violation of a CBC provision constituting a violation of West Virginia public policy. Clearly, *Younker* is distinguishable from the present case and does not change this Court's decision.

that he mislabeled his claim and it should read "Equitable Estoppel/Detrimental Reliance." With respect to this claim, Plaintiff alleges in his Complaint:

> that CSX, via its Code of Ethics and Policy Statement, as well as verbal statements by Mr. Meloti, Mr. Codd, Mr. Stull and Ms. Shrey, constitute the following: (1) implied and/or express promises to plaintiff that he would suffer no retaliation or adverse action for speaking out and/or reporting his allegations of harassment by Mr. Bobersk[y]; (2) that CSX intended or reasonably should have expected that such promises would be relied and/or acted upon by plaintiff; (3) that plaintiff, being without fault himself, reasonably relied on those promises by CSX, which reliance eventually led to his discharge; (4) and that in discharging plaintiff, CSX breached the aforementioned promises.

*Complaint*, at ¶ 27.  In order to prove equitable estoppel, the West Virginia Supreme Court stated in *Cleaver v. Big Arm Bar & Grill, Inc*., 502 S.E.2d 438 (W. Va. 1998), that:

> there must exist a false representation or a concealment of material facts; it must have been made with knowledge, actual or constructive of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice

Syl. Pt. 3, *Cleaver* (internal quotation marks and citations omitted).  In addition, the court held "[i]t is essential to the application of the principles of equitable estoppel that the one claiming the benefit thereof establish that he relied, to his disadvantage or detriment, on the acts, conduct or representation of the one alleged to be estopped." Syl. Pt. 4, *Cleaver* (internal quotation marks and citations omitted).

Defendant argues that Plaintiff's claim must fail because he could not have relied or acted upon any misrepresentation by CSX to his detriment by reporting alleged misconduct because he was under a preexisting duty under the Code of Ethics to report such misconduct. However, Plaintiff asserts that in exchange for reporting such misconduct he was assured by *both* the Code of Ethics and company officials that he would not be terminated. Thus, assuming for purposes of this motion to dismiss that Plaintiff relied upon the assurances in the Code of Ethics that he would not be terminated for reporting misconduct, the Court finds Plaintiff has adequately stated a cause of action that he detrimentally relied upon that assurance in disclosing the alleged misconduct, such reliance was reasonable, and Defendant intended or reasonably should have expected such reliance. Therefore, the Court **DENIES** Defendant's request to dismiss this cause of action.

## D.
## Breach of Oral Contract

Lastly, Defendant asserts Plaintiff's claim for breach of oral contract must be dismissed because he cannot identify any "contract" that was breached, nor has he identified any consideration in exchange for altering his at-will employee status. In his Complaint, Plaintiff admits that he was an at-will employee at the time of his termination. *Complaint*, at ¶ 24. Nevertheless, Plaintiff states:

> that a substantial employment right was created through express promises by CSX, via statements by Mr. Codd, Mr. Melotti, Ms. Shrey and Mr. Stull that no retaliation would (or could) occur, and that his job would not be terminated, based his complaint against Mr. Bobersk[y] in accordance with CSX's Code of Ethics and Policy Statement, which prohibited harassment in the workplace, and retaliation against an employee who reported harassment by a managerial employee. Plaintiff further asserts that his termination was orchestrated and manipulated by Mr.

> Boersk[y] and possibly other CSX management employees, who were indeed retaliating against him based upon his continued complaints of harassment against Mr. Bobersk[y].

*Id.*, in part. Plaintiff argues the consideration in this case arises from Defendant's verbal promise not to terminate him in exchange for Plaintiff reporting the misconduct. Although Plaintiff agrees with Defendant that he has a heavy burden to show that his at-will employee status was altered,[3] he asserts it is premature to dismiss his claim at this stage in the proceedings.

Defendant asserts, however, that it was under a preexisting duty not to terminate Plaintiff for reporting misconduct and, therefore, the alleged oral promise to do the same cannot be deemed consideration for an oral contract. In *Tobin v. Ravenswood Aluminum Corp.*, 838 F. Supp. 262 (S.D. W. Va. 1993), the Court explained that "[t]he doing by one of that which he is already legally bound to do is not a valuable consideration for a promise made to him, since it gives to the promisor nothing more than that to which the latter is already entitled." 838 F. Supp. at 269 (internal quotation marks and citations omitted). In addition, "[a] promise to perform a preexisting duty is not sufficient consideration for a new contract." *Id.* (citing *Employer-Teamsters, Etc. v. Weatherall Concrete*, 468 F. Supp. 1167, 1170 (1979)). As Defendant in this case concedes that it had a pre-existing duty under its Code of Ethics not to terminate Plaintiff for reporting misconduct, the oral assurances made by company representatives to the same end cannot be valid consideration to support the oral contract Plaintiff states was created. As Plaintiff has not indicated there was any

---

[3]*See Suter v. Harsco Corp.*, 403 S.E.2d 751, 754 (W. Va. 1991) (italics original) (stating that the presumption in West Virginia "is, that every employment relation is terminable at will, [thus,] any promises alleged to alter that presumptive relationship must be very *definite* to be enforceable").

other consideration given, Plaintiff's claim for breach of oral contract cannot survive. Therefore, the Court **GRANTS** Defendant's motion to dismiss this claim.

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** Defendant's motion with respect to Plaintiff's claim for outrage, violation of public policy, and breach of oral contract, and **DENIES** Defendant's motion with respect to Plaintiff's claim for equitable estoppel and detrimental reliance. If the parties believe they need additional time to prepare for trial on the remaining issue, the Court **DIRECTS** the parties to submit a revised Rule 26(f) report on or before **August 18, 2006**.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: August 4, 2006

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE